UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW FISHER,
    Plaintiff,

                                                                                              CIVIL ACTION NO. 18-11678-DJC

    v.

DAVID KEW,
NICKOLAS[1] DOKOS,
    Defendants.

ORDER ON DEFENDANTS' MOTION TO COMPEL
PLAINTIFF'S FURTHER DEPOSITION TESTIMONY (#25.)

KELLEY, U.S.M.J.

Matthew Fisher brings suit against Lowell police officers David Kew and Nickolas Dokos, in their individual capacities, alleging excessive force and illegal arrest in violation of 42 U.S.C. § 1983 (Counts I and II) and violation of Mass. Gen. L. c. 12, § 11I, the Massachusetts Civil Rights Act (Count IV).[2] (#1 at 3-4.)

On August 19, 2015, in Lowell, Massachusetts, police responded to a report of a robbery of a store. *Id*. at 2. According to Mr. Fisher's version of the facts, taken from his complaint and his deposition testimony, Officers Kew and Dokos stopped him as he was walking down the street, even though he did not fit the description of the robber. *Id*. at 2. They told plaintiff, "[A] store was robbed

---

[1] In their pleadings, defendants have put the name "Nicholas" in parentheses after the name "Nickolas," because plaintiff misspelled Officer Dokos' first name. *See, e.g.*, #26 at 1; #26-1 at 1 (police report authored by Officer Dokos in which he spells his name "Nicholas").

[2] Count III, alleging that the City of Lowell violated 42 U.S.C. § 1983, and Count V, alleging that defendants violated Mass. Gen. L. c. 258, the Massachusetts Tort Claims Act, (#1 at 4-5), have been dismissed. (#13.)

and you fit the description." (#26-4 at 12.) Plaintiff told them he did not rob the store, asked if he was free to go, and when the officers told him he was not, he ran away. *Id.* at 13. As he was fleeing, plaintiff encountered a police officer who was pointing a gun at him, so he lay down on the ground as instructed. *Id.* at 14. Plaintiff alleges that while he was "on [his] belly," with his hands cuffed behind him, Officers Dokos and Kew beat him, *id.* at 14-15, fracturing his nose, damaging his "orbital eye area" which caused "some sight loss," and inflicting other injuries. (#1 at 2-3.)

Defendants' account is that when they approached plaintiff and told him that "he fit the description of the possible suspect," he began to walk backward, away from the officers; he then ran across a busy street, throwing his backpack away as he ran; when the officers finally caught up with him, he "resisted arrest" and became "physically assaultive" as he had "an extensive struggle" with the officers; and the officers only hit him twice, in order to subdue him. (#26 at 2; #26-1 at 1-2.) The backpack which plaintiff discarded had a "TEC-DC9 firearm along with a loaded magazine" containing four rounds of nine-millimeter ammunition, and the firearm's serial number was obliterated. (#26-1 at 2.)

Plaintiff was indicted by a Middlesex County grand jury for knowingly having in his possession a large capacity weapon without a license, in violation of Mass. Gen. L. c. 269, § 10A and § 10M; being an armed career criminal, in violation of Mass. Gen. L. c. 269, § 10G(d); possession of ammunition, in violation of Mass. Gen. L. c. 269, § 10(h); removing the serial number of a firearm, in violation of Mass. Gen. L. c. 269, § 11( c); assault and battery on a public employee, in violation of Mass. Gen. L. c. 265, § 13B; resisting arrest, in violation of Mass. Gen. L. c. 268, § 32B; and disorderly conduct, in violation of Mass. Gen. L. c. 272, § 53. (#26 at 3.)

In the criminal case in Middlesex County, (Superior Court no. 1581-cr-00510), the court, Leibensperger, J., allowed a motion to suppress all evidence from the stop on the grounds that the

police did not have reasonable suspicion to stop and seize plaintiff. (#26-2 at 7-8.) On May 31, 2016, the government nol prossed all the charges against plaintiff. (#26-3.)

Plaintiff filed this suit in August 2018. (#1.) At plaintiff's deposition in connection with this case, he asserted his Fifth Amendment privilege against self-incrimination when asked questions pertaining to the backpack. (#26 at 11-13, 21-22.)[3] Defendants filed a motion to compel the plaintiff's further deposition testimony. (#25.) Defendants argue that plaintiff must answer questions about the backpack and its contents, for three reasons: (1) plaintiff "automatically" waived his Fifth Amendment privilege by bringing this lawsuit; (2) plaintiff's refusal to answer questions hampers the ability of defendants to defend against the claims; and (3) because the indictment against defendant was nol prossed by the government after a motion to suppress was allowed, it is unlikely that the case will be reopened. (#26 at 1, 6.)

II. Discussion.

A. Plaintiff has a valid Fifth Amendment right, even though the charges against him were nol prossed.

Defendants argue that the court should order plaintiff to answer questions about the backpack because it is "unlikely" that the Middlesex District Attorney's Office, having nol prossed the charges against him, will pursue those charges again, and because his testimony about the gun would not "support a conviction under a federal criminal statute." (#26-6, 10.)

The Fifth Amendment has long been interpreted to mean that a defendant may refuse to "answer official questions put to him in any other proceeding, civil or criminal, formal or informal,

---

[3] On advice of counsel, plaintiff refused to answer questions such as: "Did you have a backpack?"; "Did you drop the backpack when you ran?"; "Was there a firearm in the backpack?"; "Was there ammunition in the backpack?"; "And where did you get that firearm?" (#26 at 4-5.)

where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973); *Kastigar v. United States,* 406 U.S. 441, 453 (1972) (witness protected by the Fifth Amendment may refuse to answer questions unless he is protected against the use of his compelled answers and evidence derived from them in any subsequent criminal case); *United States v. Perez-Franco*, 873 F.2d 455, 462 (1st Cir. 1989). While a person asserting the privilege must be facing "some authentic danger of prosecution," *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997), the burden to demonstrate such a danger is "not a particularly onerous" one. *Id*. To properly invoke the privilege, "the prospective witness need only limn some reasonable possibility that, by testifying, he may open himself to prosecution." *Id*.

Defendants offer no support for their assertion if plaintiff confessed to possessing the firearm and ammunition, it is "unlikely" that Massachusetts authorities would refrain from again instituting criminal charges against him. There would certainly be nothing to prevent them from doing so. "A nolle prosequi is a strategic decision by the Commonwealth to cease pursuing charges." *Commonwealth v. Denehy*, 2 N.E.3d 161, 172 (Mass. 2014). The entry of a nolle prosequi is the equivalent of a dismissal under Massachusetts law. *See* Mass. R. Crim. P. 16, 378 Mass. 885 (1978); *Commonwealth v. Mogelinski*, 40 N.E.3d 544, 549 (Mass. 2015). Unless jeopardy has attached, which it did not here, a prosecutor may reinstate charges that have previously been nol prossed by refiling them. *Id.*; *see* Mass. R. Crim. P. 16(b).

Prosecution in Massachusetts state court would not be barred by the statute of limitations. Mass. Gen. L. c. 277, § 63 provides for a six-year statute of limitations for the gun charges plaintiff previously faced. The incident in question occurred on August 19, 2015, so the statute of limitations will run in August 2021. Nor would the fact that Massachusetts Superior Court Judge Leibensperger allowed a motion to suppress prevent the government from reinstituting the charges, as plaintiff's

confession would constitute "other evidence, independent of the evidence which had been suppressed" on which to base a prosecution. *See Commonwealth v. Williams*, 725 N.E.2d 217, 222 (Mass. 2000).

Defendants' assertion that plaintiff's confession to illegal possession of the gun and ammunition would not expose plaintiff to federal prosecution borders on the ridiculous. The statute of limitations for federal gun charges is five years, *see* 18 U.S.C. § 3282, so federal authorities have until August 2020 to charge plaintiff.

In short, plaintiff has a valid Fifth Amendment privilege, and he properly asserted it at his deposition.

> B. <u>Plaintiff did not "automatically" waive his Fifth Amendment rights by bringing this lawsuit, and defendants' ability to defend against the claims are not significantly hampered by his invocation of those rights</u>.

Defendants argue that because plaintiff "voluntarily chose to file this civil claim," he "therefore waived any possible Fifth Amendment assertions." (#26 at 7.) This is plainly wrong. In support of their argument, defendants rely on *Independent Productions Corp. v. Loew's, Inc.,* 22 F.R.D. 266 (S.D.N.Y 1958), (#26 at 7), a case with no precedential value for this court, in which a district court judge in the Southern District of New York, *in 1958*, arguably adopted the "automatic waiver rule," where a civil plaintiff waives the right to assert a privilege by bringing suit. 22 F.R.D. at 277. Defendants inexplicably ignore the fact that the First Circuit expressly rejected the holding of *Independent Productions* thirty years later, in *Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire*, 838 F.2d 13, 20 (1st Cir. 1988).

In *Greater Newburyport,* the First Circuit considered whether plaintiffs in a civil rights action could refuse to answer questions in discovery because the information sought was protected by the attorney-client privilege in connection with a prior criminal matter. Rejecting the "automatic waiver

5

rule," the court observed that by enacting 42 U.S.C. § 1983, "Congress concluded that private enforcement of individual rights is in the public interest. This important public policy will not be advanced by presenting a party with the Hobson's choice of either dropping its claim or revealing all confidential communications related to a criminal defense." *Id*. at 20-22. The First Circuit made clear that even in a situation involving "quasi-constitutional" privileges, such as the attorney-client privilege in the context of a civil case, the automatic waiver rule was "too harsh." *Id*. at 20. "[A] court should begin its analysis with a presumption in favor of preserving the privilege." *Id*. The court adopted a balancing test:

> In a civil damages action … fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails. The burden on the defendant is proportional to the importance of the privilege. The court should develop the parameters of its discovery order by carefully weighing the interests involved, balancing the importance of the privilege asserted against the defending party's need for the information to construct its most effective defense.

*Id*.

In *Serafino v. Hasbro, Inc*., 82 F. 3d 515, 517-18 (1st Cir. 1996), the First Circuit employed the balancing test endorsed in *Greater Newburyport* to uphold the district court judge's dismissal of a civil claim. There, a father and daughter employed by Hasbro alleged that Hasbro retaliated against both of them after the daughter reported that she had been the victim of sexual harassment. *Id*. at 516-17. When the father was deposed, he refused to answer questions about his employment, invoking his Fifth Amendment right not to incriminate himself. *Id*. at 517. Hasbro moved to dismiss the father's claims, arguing that because he had paid bribes to Hasbro employees to maintain certain beneficial business arrangements he had with the company, "he [was] in no position to claim that defendants

somehow wrongfully took these benefits away" or that his termination was not proper. *Id*. (internal quotations omitted).

The First Circuit reasoned that where the information plaintiff was withholding by asserting the privilege was vital to the defense of the case and could not be obtained in any other way, and there was "no adequate alternative remedy to dismissal," dismissal by the district court was proper. *Id*. The court reiterated that the Fifth Amendment privilege should be carefully safeguarded in conducting the balancing test, emphasizing that the burden on the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side. *Id*. at 518.

In this case, defendants argue that plaintiff's "complete refusal" to answer "any questions about the facts relevant to his complaint" hampers their ability to defend the case. (#26 at 7-8.) This argument is flawed in several respects. First, plaintiff did not refuse to answer any questions about the case. The 118-page transcript of plaintiff's deposition, portions of which are attached to the defendants' motion, demonstrates that plaintiff answered, in detail, questions concerning what happened before, after, and during his encounter with the police. *See* #26-4.

Second, defendants' ability to defend the case is not impaired by plaintiff's refusal to admit that he illegally possessed a firearm. This is not a case where "one party's assertion of his constitutional right … obliterate[s] another party's right to a fair proceeding." *Serafino*, 82 F.3d at 517. It is true that whether plaintiff knowingly possessed the firearm goes to his state of mind as he fled from the police and, under defendants' version of events, whether and to what degree he struggled with them as they were arresting him. It is possible that at trial, a jury might conclude that plaintiff was so afraid of being apprehended and charged with illegally possessing a firearm that he panicked and struggled with the police once caught. Even if plaintiff does not admit that he knew what was in the backpack at trial, however, defendants can state that they saw plaintiff discard the backpack as he

7

ran away from them, and they can inform the jury of its contents. The jury will be free to draw its own conclusions about plaintiff's state of mind.

In sum, the balance here favors permitting plaintiff to assert his constitutional Fifth Amendment right not to incriminate himself at his deposition. How this matter plays out at trial, and whether the trial judge gives an adverse inference instruction on the matter, are questions to be resolved by the trial judge. *See Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) (allowing adverse inference to be drawn from a civil party's assertion of Fifth Amendment privilege); *In re Carp,* 340 F.3d 15, 23 (1st Cir. 2003) ("[I]n a civil proceeding, the drawing of a negative inference is a permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment.")

III. Conclusion.

Plaintiff has a valid Fifth Amendment right not to answer questions about his alleged possession of a firearm and ammunition in connection with the incident in this case. The question whether plaintiff possessed the gun, while relevant to defendants' case, is not so significant that it overrides plaintiff's substantial constitutional Fifth Amendment rights. Defendants' motion to compel (#25) is denied.

August 5, 2019

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge